**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

DANIEL BAYSDELL,

    Petitioner,                                       Civil No. 04-CV-73293-DT
                                                        HONORABLE LAWRENCE P. ZATKOFF
v.                                                                UNITED STATES DISTRICT JUDGE

CAROL HOWES,

    Respondent,
_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS**

Daniel Baysdell, ("Petitioner"), presently confined at the Crane Correctional Facility in Coldwater, Michigan, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his state court conviction for obstructing justice, M.C.L.A. 750.505; and being a third felony habitual offender, M.CL.A. 769.11. For the reasons stated below, the petition for writ of habeas corpus is denied.

**I. BACKGROUND**

Petitioner was convicted following a jury trial in the Wayne County Circuit Court. This Court recites verbatim the relevant facts regarding petitioner's conviction from the Michigan Court of Appeals' opinion, which are presumed correct on habeas review. *See Monroe v. Smith,* 197 F. Supp. 2d 753, 758 (E.D. Mich. 2001):

> The complainant testified that she was at the 31st District Court in Hamtramck to be a witness in a case involving defendant. In short, she indicated that the case involved criminal charges against defendant based on him making harassing and threatening telephone calls to the complainant and her friend Barbara Baker. She testified that, while she, Baker, and her sister Michelle Torres were waiting in the hallway at the courthouse, defendant saw them from his location in a holding cell with a window on its door. The complainant testified as follows about statements and actions made by defendant after he saw her:

> He was just--he saw us, and then he started just yelling out things like, you know--he said so much that day. He said that he was--if I was to say anything-- you know, I'd better keep my mouth shut. But he said other words to that effect. I'd better keep my mouth shut. And then he was going like this (demonstrating[)], like this (demonstrating), and continuing to do that.

The complainant indicated that defendant made a slashing motion across his throat and, when asked how many times he did this, she said, "Oh. I don't know. He did it a couple--I would say a couple of times." She more specifically testified that defendant said, "Keep your f --- ing mouth shut or else," and then made the slashing motion across his throat. She further testified that defendant "was charging at the door, trying to get out of the door," and, when asked what exactly he was doing, she said, "I guess he was like running and trying to hit it to open it." The complainant also testified that defendant referred to the death of Torres' son in a car accident and said, "How does it feel to lose a kid? How is it going to feel when Christmas comes around and you're not going to see him?"

Baker testified that, at the courthouse, defendant said, "You f --- ing b ----! I can't believe you are going to do this! If you say a word" and then moved his finger across his throat in a slashing motion "like he'd slit her throat." She said that she could tell this was directed at the complainant. Baker also testified that defendant told her "when this is all over with, there's no place you can run and hide; I'll find you." She said that "the night before, we had a phone call that said if we showed up, that we're all dead." Baker further testified that, at the courthouse, she heard defendant say that he was glad Torres' son "Ricky" was dead and, "How does it feel to have your son dead?"

Torres testified that defendant said, "You talk, you f --- ing b ----," and put his finger across his neck in a slashing motion and that he was looking at the complainant at the time. She also testified that defendant kicked, punched, and pounded on the door to his holding cell. Torres said that defendant was singing about her son Ricky, "Hah, hah, I'm glad he's dead" and various things that she could not do with him, including having Christmas with him, and that he "would like to shake the man's hand who hit my sister's car for doing such a fine job" in killing her son.

Harold Smith testified that, on the relevant date, he was a court officer at the 31st District Court. Smith said that defendant was in the lockup on that date. When asked if anything unusual happened on that date involving defendant, Smith replied:

> Yes. What we did was, when [defendant] came up, he noticed that the witnesses were sitting across from the holding cell. And what had happened, he made some type of remark. And what I did was ask the young ladies to sit down further down the hall.

> Smith also testified that he "heard the like door pounding" and that he heard defendant's voice and that defendant was very loud.  Smith further testified that he saw defendant take "his finger like he had a knife, and just went across his throat," and that he also heard defendant "yelling about a little boy named Ricky; that he wouldn't be home for Christmas."

*People v. Baysdell,* No. 235904, * 1-2 (Mich.Ct.App. February 14, 2003).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 469 Mich. 877; 668 N.W. 2d 148 (2003).  On August 24, 2004, petitioner filed a petition for writ of habeas corpus on the following grounds:

> I.  Whether the prosecutor committed misconduct by suppressing exculpatory evidence which could have reasonably affected the outcome of the trial.
>
> II. The trial court erred reversibly by allowing the jury to hear prejudicial bad acts testimony concerning defendant's prior convictions, prior acts of violence, and general questionable character, where defendant was being tried for a crime unrelated to the alleged "bad act" activities.
>
> III. During cross-examination, the prosecutor elicited testimony from the defendant that he had been incarcerated on prior occasions for other offenses.
>
> IV. Defendant's conviction must be reversed because the prosecution failed to present constitutionally sufficient evidence that the defendant was guilty of the crime of obstruction of justice.
>
> V. Defendant argues that his constitutional right to a speedy trial was infringed upon.
>
> VI. The trial court erred in denying defendant's motion to set aside the verdict where the post-conviction hearing revealed that a juror had conducted his own outside research as jury deliberations were ongoing and brought in printed materials taken from a computerized dictionary concerning the elements of the offense and the concept of reasonable doubt which was utilized by some of the jurors.
>
> VII. Whether the judge committed reversible error when re-reading the elements of the offense of obstruction of justice to the jury after learning of the numerical division then sending them back in to deliberations.
>
> VIII.  Whether petitioner was denied the effective assistance of counsel where

defense counsel gave petitioner a false and illusionary concept as to the seriousness of the offense and the possible penalties that the court could impose.

Respondent filed a motion for summary judgment, contending that the first, fifth. seventh and eighth claims had not been exhausted with the Michigan courts. Petitioner filed a response to the motion for summary judgment, in which he argued that all eight of his claims had been exhausted. In the alternative, petitioner asked the Court to stay the proceedings and hold the petition in abeyance while he returned to the state courts to exhaust these additional claims. This Court issued an order finding that petitioner's first, fifth, seventh, and eighth claims had not been exhausted with the state courts. The Court further denied petitioner's motion to hold his petition in abeyance but permitted him to delete his unexhausted claims and allowed him to proceed only on the four claims which had been exhausted with the state courts. Respondent subsequently filed an answer which addressed petitioner's four exhausted claims and petitioner has filed a reply to the answer.

## II. STANDARD OF REVIEW

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the

4

state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III. DISCUSSION

**A. Claim # 1. The "prior bad acts" evidence claim.**

Petitioner first contends that the trial court improperly admitted "other acts" evidence at his trial, in violation of M.R.E. 404(b).

The admission of "prior bad acts" evidence against petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *See Bugh v. Mitchell,* 329 F. 3d 496, 512 (6th Cir. 2003). Moreover, in light of the overwhelming evidence of guilt in this case, the Michigan Court of Appeals' conclusion that the admission of this "other acts" evidence was harmless error was not an unreasonable application of clearly established law so as to entitle petitioner to habeas relief. *See Ford v. Curtis,* 277 F. 3d 806, 811 (6th Cir. 2002).

**B. Claim # 2. The prosecutorial misconduct claim.**

In his second claim, petitioner contends that the prosecutor improperly elicited testimony from petitioner on cross-examination that he had previously been incarcerated for prior criminal offenses. The Michigan Court of Appeals rejected this claim, finding that the prosecutor had a

5

"good faith" basis to elicit this evidence in order to impeach petitioner's direct examination testimony that the complainant had prevented him from seeing his daughter during the relevant period of time. *People v. Baysdell,* Slip. Op. at * 4.

When a petitioner seeking habeas relief makes a claim of prosecutorial misconduct, the reviewing court must consider that the touchstone of due process is the fairness of the trial, not the culpability of the prosecutor. On habeas review, a court's role is to determine whether the conduct was so egregious as to render the entire trial fundamentally unfair. *Serra v. Michigan Department of Corrections*, 4 F. 3d 1348, 1355-56 (6th Cir. 1993). In evaluating prosecutorial misconduct in a habeas case, consideration should be given to the degree to which the challenged remarks had a tendency to mislead the jury and to prejudice the accused, whether they were isolated or extensive, whether they were deliberately or accidentally placed before the jury, and, except in the sentencing phase of a capital murder case, the strength of the competent proof against the accused. *Id.* In deciding whether prosecutorial misconduct mandates that habeas relief be granted, the Court must apply the harmless error standard. *See Eberhardt v. Bordenkircher*, 605 F. 2d 275 (6th Cir. 1979).

Because petitioner's testimony that the complainant had prevented him from seeing their child gave the prosecutor a good faith basis to impeach petitioner by asking whether his prior incarceration had been the real reason for his lack of contact with his daughter, petitioner was not deprived of a fair trial in this case. *See e.g. Busiello v. McGinnis,* 235 F. Supp. 2d 179, 188 (E.D.N.Y. 2002)(allowing prosecutor to impeach witness with questions about specific prior bad acts, involving alleged attempt to tamper with the testimony of another witness, did not constitute constitutional error, where the witness, who had also changed his grand jury testimony, admitted contacting the other witness, giving the prosecutor a good faith basis for the questions). Moreover,

in light of the overwhelming evidence in this case, the prosecutor's questions about the fact that petitioner had previously been incarcerated did not have a substantial and injurious effect on his case so as to entitle him to habeas relief. *See e.g. Tolbert v. LeCureaux,* 811 F. Supp. 1237, 1244 (E.D. Mich. 1993).

### C. Claim # 3. The sufficiency of evidence claim.

Petitioner next contends that there was insufficient evidence to convict him of obstruction of justice.

In *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), the United States Supreme Court established that a federal court's review of a sufficiency of the evidence claim must focus on whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." The Court must view this standard through the framework of 28 U.S.C. § 2254(d). *See Martin v. Mitchell*, 280 F. 3d 594, 617 (6th Cir. 2002). The *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n. 16. "The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim." *Matthews v. Abramajtys*, 319 F. 3d 780, 788-89 (6th Cir. 2003) (citation omitted).

Petitioner was convicted under M.C.L.A. 750.505 of the common law crime of obstruction of justice. The common law crime of obstruction of justice includes the intimidation or coercion of a witness in judicial proceedings. *People v. Vallance*, 216 Mich. App 415, 419; 548 N.W. 2d 718 (1996); *People v. Tower*, 215 Mich. App 318, 320; 544 N.W. 2d 752 (1996). Such coercion of a witness requires that the defendant have made an oral or physical threat, but the crime of obstruction of justice is complete with the commission of the attempted coercion regardless of

whether the threat actually succeeds in dissuading or discouraging the witness from testifying. *People v. Milstead,* 250 Mich. App 391, 406; 648 N.W. 2d 648 (2002). In order to be convicted of obstruction of justice, a defendant's acts must be "unequivocally referable" to the commission of that crime. *Tower,* 215 Mich. App. at 320-21. Under Michigan law, "[t]here is no 'talismanic requirement that a defendant must say, "Don't testify" or words tantamount thereto'" to have committed obstruction of justice. *Id.* at 322 (*quoting People v. Thomas*, 83 Cal App 3d 511, 513; 148 Cal Rptr 52 (1978)).

This Court agrees with the Michigan Court of Appeals that a rational trier of fact could have concluded that the evidence at trial proved the elements of the common law crime of obstruction of justice beyond a reasonable doubt. The complainant testified that petitioner warned her to "Keep your f --- ing mouth shut or else," before making a slashing motion across his throat. Petitioner made this threat at the courthouse where the complainant was set to testify against him in another criminal case. Baker testified that petitioner warned the complainant at the courthouse, "If you say a word," before moving his finger across his throat in a slashing motion "like he'd slit her throat." Torres testified in a similar manner. When viewed in a light most favorable to the prosecution, a reasonable factfinder could conclude that these threatening statements and actions were "unequivocally referable" to petitioner attempting to prevent the complainant from testifying against him. Accordingly, the Michigan Court of Appeals' decision was not an unreasonable application of clearly established law so as to entitle petitioner to habeas relief.

**D. Claim # 4. The juror misconduct claim.**

Petitioner next contends that he was deprived of a fair trial because of juror misconduct.

Petitioner first contends that he was deprived of a fair trial because one juror obtained

8

definitions for the legal terms "reasonable doubt", "coercion", and "obstruction of justice" from a dictionary computer program and sharing those definitions with other jurors during deliberations. The Michigan Court of Appeals rejected this claim, because the juror who obtained these definitions testified at a post-trial evidentiary hearing that the dictionary definitions for these legal terms "basically matched" the same definitions given by the trial judge to the jury. Because the dictionary definitions were substantially identical to the trial court's instructions regarding the relevant terms, the Michigan Court of Appeals concluded that petitioner was not prejudiced. *People v. Baysdell,* Slip. Op. at 3.

A jury's use of a dictionary to define a relevant legal term is error, but it is not prejudicial *per se. See United States v. Gillespie,* 61 F. 3d 457, 459 (6th Cir. 1995). A juror's declaration at an evidentiary hearing is not inherently suspect as to whether the jury used a dictionary definition, rather than the definition in the court's instruction, of the relevant legal term to reach its verdict. *Id.* at 460. Moreover, if jurors in fact used the dictionary definition to reach their verdict, the defendant must prove that he was prejudiced thereby; prejudice is not presumed. *Id.*

Petitioner has failed to show that he was prejudiced by the fact that a juror brought a dictionary definition of several legal terms into the jury room, because petitioner has presented no evidence that the dictionary definitions differed from the trial court's instructions or that the jurors did not follow the judge's instructions. *See Rivera v. Pliler,* 120 Fed. Appx. 667, 669 (9th Cir. 2004).

Petitioner lastly complains that one of the jurors conducted an unauthorized experiment by comparing a door, window, and hallway at the courthouse where petitioner's trial was taking place. There is a dispute over whether this portion of petitioner's claim has been exhausted with the state

9

courts or not. Where an unexhausted federal constitutional claim is plainly meritless, it does not offend federal-state comity to address the merits of those claims. *See Tolbert,* 811 F. Supp. at 1239. In this case, it would be easier for the Court to address the merits of petitioner's claim rather than to determine whether or not his claim has properly been exhausted.

For a juror to perform and report to other jurors the results of an out-of-court experiment conflicts with a criminal defendant's constitutional right to a fair and impartial jury that considers only the evidence presented at trial. *See Doan v. Brigano,* 237 F. 3d 722, 733 (6th Cir. 2001). However, to obtain habeas relief, a habeas petitioner must show that the juror's out-of-court experiment had a substantial and injurious effect or influence on the jury's verdict. *Id.* at 736; *See also Mason v. Mitchell,* 320 F. 3d 604, 638 (6th Cir. 2003).

In the present case, petitioner does not explain how this juror's unauthorized experiment was prejudicial or how it substantially affected the jury's verdict. Moreover, in light of the overwhelming evidence of guilt in this case, the juror's out-of-court experiment was harmless error at best. *Doan,* 237 F. 3d at 738. Petitioner is not entitled to habeas relief on his final claim.

## IV.   ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.** . The Court declines to issue a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).   The Court will also deny petitioner leave to appeal in forma pauperis, because the appeal would be frivolous. *Dell v. Straub,* 194 F. Supp. 2d 629, 659 (E.D. Mich. 2002).

s/Lawrence P. Zatkoff<br>
LAWRENCE P. ZATKOFF

Dated: July 27, 2006								UNITED STATES DISTRICT JUDGE


CERTIFICATE OF SERVICE

    The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on July 27, 2006.


                                         s/Marie E. Verlinde
                                         Case Manager
                                         (810) 984-3290